# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRAINTREE LABORATORIES, INC.,** : | |
| Plaintiff, : | |
| : | Civ. No. 11-01854 |
| v. : | |
| : | |
| **AMRUTHAM, INC.,** : | |
| Defendant. : | |
| : | |

## ORDER

### I.   BACKGROUND

This case turns on the statutory framework governing new and generic drug approvals and its mechanisms for patent enforcement. A pharmaceutical company seeking to manufacture a new drug must file a New Drug Application (NDA) with the Food and Drug Administration. 21 U.S.C. § 355(a). If the FDA approves the Application, it lists the drug and any patents covering the drug's approved aspects in <u>Approved Drug Products with Therapeutic Equivalence Evaluations</u>—otherwise known as the "Orange Book." <u>Id.</u> § 355(b). A pharmaceutical manufacturer seeking approval to market a generic version of a previously approved drug may submit an Abbreviated New Drug Application to the FDA. 21 U.S.C. § 355(j). An ANDA offers an expedited approval process for generic equivalents of approved drugs.

For a patent listed in the Orange Book that "claims the listed drug," the generic manufacturer may certify that such patent "is invalid or will not be infringed by the manufacture, use, or sale of the new generic drug for which the ANDA is submitted." <u>See</u> <u>Mylan. Pharm., Inc. v. Thompson</u>, 268 F.3d 1323, 1326-27 (Fed. Cir. 2001) (describing regulatory framework). This is referred to as a Paragraph IV certification. <u>Id.</u>

Plaintiff Braintree Laboratories, Inc. holds approved NDA No. 22372 for SUPREP®

1

Bowel Prep Kit, a laxative that prepares patients for colonoscopies. Plaintiff also owns by assignment U.S. Patent No. 6,946,149 ('149 Patent), which claims a laxative formula that does not cause "clinically significant shifts in [patients'] electrolytes." *('149 Patent at 2.)* Plaintiff submitted the '149 Patent as part of the SUPREP® NDA for listing in the Orange Book. Plaintiff thus represented to the FDA that SUPREP® does not cause clinically significant shifts in patients' electrolytes, as claimed by the '149 Patent. See 21 U.S.C. §§ 355(b), (c)(2).

On February 3, 2011, Defendant Amrutham, Inc., notified Plaintiff that it had filed an ANDA with the FDA to market a generic version of SUPREP®. Defendant's ANDA included a Paragraph IV certification that its product does not infringe any of the '149 Patent's valid claims despite containing the same active ingredients as SUPREP®. *(Doc. No. 13 at 8.)*

On March 16, 2011, Plaintiff commenced this patent infringement suit. On June 3, 2011, Defendant filed its Answer and Counterclaims. *(Doc. Nos. 1, 13.)* Defendant has moved for Judgment on the Pleadings on its First Counterclaim, or in the Alternative Summary Judgment, seeking removal of the '149 Patent from the Orange Book. *(Doc. No. 14.)* Plaintiff has moved to dismiss Defendant's Second, Third, and Fourth Counterclaims for false marking, patent misuse and unclean hands, respectively. *(Doc. No. 19.)* On October, 27, 2011, I dismissed Defendant's Second Counterclaim. *(Doc. No. 49.)* Plaintiff also has moved to strike Defendant's Fifth and Sixth Affirmative Defenses for patent misuse and unclean hands. *(Doc. No. 17.)*

**II.      JUDGMENT ON THE PLEADINGS**

In its First Counterclaim, Defendant alleges that SUPREP® causes clinically significant electrolyte shifts—in contravention of the '149 Patent's claims—and the '149 Patent should therefore be delisted from the Orange Book. For the reasons that follow, I will deny Defendant's Motion for Judgment on the Pleadings.

A party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed.

2

R. Civ. P. 12(c). The pleadings are closed only when a responsive pleading has been filed. See Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991); Norcal Gold, Inc. v. Laubly, 543 F. Supp. 2d 1132, 1135 (E.D. Cal. 2008) ("For purposes of Rule 12(c), the pleadings are 'closed' only when the parties have filed all of the pleadings Rule 7(a) contemplates.").

Defendant's Motion is procedurally defective. Defendant filed its Counterclaims and the instant motion on June 3, 2011. Plaintiff filed its Answer on July 1, 2011. Defendant thus filed for Judgment on the Pleadings before Plaintiff filed its Answer. Accordingly, the relevant pleadings were not closed when Defendant filed for Judgment on the Pleadings, as Rule 12(c) requires.

In the alternative, I find Defendant is not entitled to judgment as a matter of law. As an initial matter, the Parties dispute whether the Exhibits Defendant attached to its Answer and Counterclaims are part of the pleadings that I may consider for this motion. See Fed. R. Civ. P. 12(d) (If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). I find that Defendant is not entitled to judgment as a matter of law even if I consider the exhibits.

I may not grant judgment on the pleadings unless "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005). Moreover, I "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Id.

Defendant argues that the '149 Patent does not cover Plaintiff's product and so should be removed from the Orange Book. Defendant provides insufficient support for this conclusory assertion, and ignores numerous unresolved issues of material fact.

The '149 Patent claims a composition that does not cause "clinically significant

3

electrolyte shifts," which the patent defines as "alterations in blood chemistry that are outside the normal upper or lower limits of their normal range or other untoward effects." *('149 Patent at 2.)* To show that the '149 Patent does not cover SUPREP®, Defendant cites Table 2 in the SUPREP® product insert—"Patients with Normal Baseline Serum Chemistry with a Shift to an Abnormal Value While on the Split-Dose 2-Day Regimen"—submitted to the FDA during the NDA approval process. *(Doc. No. 13-1 at 2.)* Table 2 "shows the percentages of patients who developed new abnormalities of important electrolytes and uric acid after completing the bowel preparation with [] SUPREP Bowl Prep Kit . . . ." *(Id.)* Defendant argues that the '149 Patent does not cover SUPREP® because Table 2 demonstrates that SUPREP® causes the very electrolyte shifts that the '149 Patent's claims exclude. I disagree.

Defendant provides no basis to conclude that the SUPREP® insert includes data relevant to interpreting the '149 Patent's claims. Moreover, Defendant fails to explain how the "abnormal value" in Table 2 establishes deviations that are "clinically significant" within the meaning of the patent claims. The '149 Patent and the SUPREP® insert were developed for two distinct purposes and pursuant to separate legal requirements. Compare 35 U.S.C. §§ 100 *et seq*. (governing patentability of inventions) with 21 C.F.R. §§ 201.57, *et seq*. (governing labeling requirements for prescription medications).

Defendant also ignores other portions of the '149 Patent, including its clinical trials description, which provides the context necessary to understand any relationship between the '149 Patent and Table 2. Absent discovery or claim construction, I am unable to conclude that Table 2 and the '149 Patent describe the same phenomena, and that SUPREP® causes the electrolyte shifts that Patent '149 disclaims. Accordingly, I will deny Defendant's Motion to delist the '149 Patent from the Orange Book.

4

### III. SUMMARY JUDGMENT

Defendant moves in the alternative for summary judgment on its First Counterclaim. For the reasons that follow, I will deny Defendant's Motion.

Under Rule 56(a), I must grant summary judgment if the moving Party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing the existence of such an issue for trial." Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). "To raise a genuine issue of material fact, however, the opponent need not match, item for item, each piece of evidence proffered by the movant." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Defendant has moved for summary judgment on its First Counterclaim before any discovery or claim construction. Because I considered Defendant's Exhibits in its 12(c) Motion, and the Parties have submitted no additional evidence, the same analysis applies. As I have discussed, numerous issues of material fact remain.

Defendant argues that Plaintiff possesses all necessary information to address any remaining factual questions, and asks that I order Plaintiff to respond substantively to Defendant's allegations. *(Doc. No. 27 at 10.)* Plaintiff is not required to produce evidence to show that material issues of fact remain when Defendant has not carried its initial burden. See Fed. R. Civ. P. 56(c) (party asserting that a fact is genuinely disputed may support that assertion by showing that the materials cited do not establish the absence of a genuine dispute). Defendant may seek any germane information Plaintiff possesses through discovery. Defendant may not, however, circumvent discovery and claim construction by making conclusory arguments that it is entitled to judgment as a matter of law.

5

## IV. MOTION TO DISMISS

### A. Legal Standard

In ruling on a motion to dismiss under 12(b)(6), I accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). I will not grant a motion to dismiss unless, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, I find the plaintiff's claims lack facial plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). A plaintiff must plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations and citation omitted).

### B. Analysis

Plaintiff moves to dismiss Defendant's Third and Fourth Counterclaims for patent misuse and unclean hands. Because I conclude that the Hatch-Waxman Act precludes Defendant's Counterclaims, I will grant Plaintiff's Motion.

The 2003 Amendment to the Hatch-Waxman Act "provides *a limited counterclaim* to a generic manufacturer" in a Paragraph IV infringement action. Novo Nordisk v. Caraco Pharm., Labs, Ltd., 601 F.3d 1359, 1364 (Fed. Cir. 2010) (emphasis added). The Act authorizes the generic manufacturer to assert a counterclaim "on the ground that the patent does not claim either (aa) the drug for which the application was approved; or (bb) an approved method of using the drug." 21 U.S.C. § 355(j)(5)(C)(ii)(I).

Congress enacted this provision in response to Mylan Pharm., Inc. v. Thompson, in which the Federal Circuit held that a counterclaimant did not have a private cause of action to delist an allegedly irrelevant patent from the Orange Book. 268 F.3d 1323, 1331 (Fed. Cir.

6

2002); See Novo Nordisk, 601 F.3d at 1364 (discussing history of the counterclaim provision). The Federal Circuit has interpreted the 2003 Amendment as correcting the specific issues raised in Mylan – deterring "pioneering manufacturers from listing patents that were not related at all to the patented product or method." Id. at 1365. By describing the 2003 Amendment as providing "a limited counterclaim" in Novo Nordisk, the Federal Circuit strongly suggested that this provision created the only private right of action for an alleged infringer seeking to delist a patent from the Orange Book.

Although district courts are split on this issue, the cases denying counterclaims based on improper Orange Book listings comport with the Federal Circuit's interpretation of the 2003 Amendments. See Takeda Pharm. Co. v. Zydus Pharm. USA, Inc., No. 10-1723, 2011 U.S. Dist. LEXIS 56328, at *15-17 (D. N.J. May 25, 2011) (dismissing patent misuse claim based on improper Orange Book listing); Schwarz Pharm., Inc. v. Teva Pharm. USA, Inc., No. 01-4995, 2005 WL 4158850, at *5 (D. N.J. Feb 4, 2005) ("[I]n a patent action improper listing in the Orange Book cannot be the basis of a misuse defense.").

The two cases permitting patent misuse counterclaims are readily distinguishable. In In re Gabapentin Patent Litig., the Court did not address the issue of whether the statutory scheme precluded a patent misuse counterclaim, because the defendant had argued only that patent misuse could never form a basis for affirmative relief. 649 F. Supp. 2d 340, 349 (D. N.J. 2009). Moreover, in addition to Orange Book mislisting, the defendant was alleged to have engaged in an "overall scheme to forestall, preclude, and delay generic competition," which included withholding prior art from the Patent Office and pursuing years of baseless litigation against generic manufacturers. Id. at 345-46. Defendant makes no such allegation against Plaintiff.

Similarly, in Eli Lilly and Co. v. Wockhardt Ltd., the Court did not address the issue present here. No. 08-1547, 2010 WL 2605855 (S.D. Ind. June 22, 2010). Rather, citing no

7

authority, the Court held that an alleged infringer could amend its answer to include a patent misuse counterclaim, because doing so was "not futile." <u>Id.</u> at *2. The liberal rules governing pleading amendments obviously are inapplicable to a motion to dismiss. <u>Id.</u> (noting the Federal Rules' "liberal attitude toward amendments"). Accordingly, the cases cited by Defendant do not support its argument.

In its First Counterclaim, Defendant seeks the delisting of the '149 Patent in the Orange Book under 21 U.S.C. § 355(j)(5)(C)(ii). Once again, the Federal Circuit has made clear that this is the only counterclaim available to a defendant in a Paragraph IV infringement action. Moreover, Defendant's Third and Fourth Counterclaims for patent misuse and unclean hands depend entirely on finding that Plaintiff improperly listed the '149 Patent in the Orange Book, making these claims redundant. Accordingly, I will dismiss Defendant's Counterclaims for patent misuse and unclean hands.

Even if the Hatch-Waxman Act did not preclude Defendant's counterclaims, Defendant cannot sustain a claim for unclean hands, which is an affirmative defense, not a cause of action. *(Doc. No. 28 at 13-14.)* <u>See</u> <u>Aptix Corp. v. Quickturn Design Sys.</u>, 269 F.3d 1369, 1376 (Fed. Cir. 2001) (unclean hands provides an affirmative defense to an infringement claim, not a claim for relief); <u>Alcatel USA, Inc. v. DGI Tech., Inc.</u>, 166 F.3d 772 (5th Cir. 1999) (approving lower court's definition of unclean hands as "an equitable defense which provides that a party must have acted fairly and justly in its dealings with another in order to assert a cause of action against that party"); <u>In re Gabapentin Patent Litig.</u>, 649 F. Supp. 2d 340, 348 (D. N.J. 2009) ("unclean hands cannot form the basis for a declaration of unenforceability of a patent"); <u>Hay Group, Inc. v. Bassick IV</u>, 571 F. Supp. 2d 840, 845 (N.D. Ill. 2008) (holding unclean hands is an affirmative defense, not a cause of action).

8

Defendant recognizes as much when it alleges in this Counterclaim that "Braintree is not entitled to an equitable remedy" and does not seek any affirmative relief. *(Doc. 13 at 17.)* Accordingly, even if the Hatch-Waxman Act did not bar Defendant's unclean hands Counterclaim, I would dismiss it.

## V. MOTION TO STRIKE

Plaintiff moves to strike Defendant's Fifth and Sixth Affirmative Defenses for patent misuse and unclean hands. I will deny Plaintiff's Motion.

### A. Legal Standard

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense . . . ." Fed. R. Civ. P. 12(f). Striking a defense is a "drastic remedy," and I will do so only "where the insufficiency of the defense is clearly apparent." BJ Energy LLC v. PJM Interconnection, LLC, No. 08-3649, 2010 U.S. Dist. LEXIS 36969, at *5-6 (E.D. Pa. 2010) (citing Cipollone v. Liggett Group, Inc., 789 F.2d 181, 188 (3d Cir. 1986)). "An affirmative defense stated in general terms will not be deemed insufficient as long as it gives plaintiffs fair notice of the nature of the defense." Id. at *5.

### B. Analysis

#### i. *Patent Misuse*

Patent misuse is "the patentee's act of impermissibly broadening the physical and temporal scope of the patent grant with anticompetitive effect." Princo Corp. v. Int'l Trade Comm'n, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc). In such circumstances, "an accused infringer may invoke the doctrine of patent misuse to defeat the patentee's claim." Id. (collecting cases). As the Federal Circuit has explained:

> What patent misuse is about, in short, is "patent leverage," i.e., the use of the patent power to impose overbroad conditions on the use of the patent in suit that are not within the reach of the monopoly granted by the Government.

9

Id. at 1331 (internal quotations omitted).

Defendant has alleged facts sufficient to survive a motion to strike its patent misuse defense. Defendant argues Plaintiff "knowingly and willfully caused the '149 patent to be listed in the Orange Book for SUPREP®, knowing that the '149 patent does not cover either SUPREP® or an approved method of using SUPREP®," and "filed a complaint in bad faith against Amrutham for infringement of the '149 patent." *(Doc. No. 13 at 17.)*

Plaintiff argues that Defendant's patent misuse defense amounts to little more than a claim construction issue. *(Doc. No. 30 at 15-16.)* I disagree. Defendant's allegations, if proven, show that Plaintiff purposefully misled the FDA during the SUPREP® approval process to have its patent listed in the Orange Book.

Moreover, Defendant alleges that "Braintree knowingly falsely marks SUPREP® with the '149 patent with the intent to discourage generic competition." *(Doc. No. 13 at 15.)* Taken together, allegations that Plaintiff misled the FDA purposefully and has filed this lawsuit in bad faith to prevent generic competition make out a patent misuse defense. See Princo Corp., 616 F.3d at 1328 (patent misuse requires improperly broadening the patent's scope with anticompetitive effects).

### ii. *Unclean Hands*

Unclean hands provides an affirmative defense that "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Karpenko v. Leendertz, 619 F.3d 259, 265 (3d Cir. 2010). Although litigation misconduct, such as suing in bad faith, may prevent the patentee from enforcing its patent rights in a particular suit, litigation misconduct alone will not render a patent unenforceable in future litigation. Aptix Corp. v. Quickturn Design Sys., 269 F.3d 1369, 1375-78 (Fed. Cir. 2001).

10

In charging unclean hands, Defendant alleges "Braintree is not entitled to a remedy because it has acted unethically and in bad faith with respect to the '149 patent." *(Doc. No. 13 at 7.)* As I have discussed, Defendant alleges not only that Plaintiff filed this suit in bad faith, but that it knowingly deceived the FDA when listing the '149 Patent in the Orange Book. Moreover, Defendant seeks only to defend itself in this suit by invoking unclean hands; it does not seek to invalidate the '149 Patent altogether. *(Id.)* Accordingly, Plaintiff is not entitled to the "drastic remedy" of striking Defendant's unclean hands affirmative defense.

**CONCLUSION**

**AND NOW**, this 24th day of February, 2012, it is hereby **ORDERED** as follows:

1. Defendant's Motion for Judgment on the Pleadings, or in the Alternative Summary Judgment *(Doc. No. 14)* is **DENIED.**

2. Plaintiff's Motion to Strike Defendant's Fifth and Sixth Affirmative Defenses *(Doc. No. 17)* is **DENIED.**

3. Plaintiff's Motion to Dismiss Defendant's Second, Third, and Fourth Counterclaims *(Doc. No. 19)* is **GRANTED** with respect to Defendant's Third and Fourth Counterclaims**.** The Clerk of Court shall terminate this Motion.

**AND IT IS SO ORDERED**.

*/s/ Paul S. Diamond*
Paul S. Diamond, J.

11